IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA, WESTERN DIVISION

| | |
|---|---|
| HAUSMANN CONSTRUCTION, INC., | Case No. 5:25-cv-4041 |
| Plaintiff, | |
| v. | **AMENDED COMPLAINT**<br>**AND JURY DEMAND** |
| WOODBURY COUNTY LAW<br>ENFORCEMENT CENTER AUTHORITY,<br>WOODBURY COUNTY, IOWA,<br>GOLDBERG GROUP ARCHITECTS, LLC,<br>INTROBA, INC., BAKER MECHANICAL,<br>INC., D/B/A BAKER GROUP, | |
| Defendants | |

Plaintiff Hausmann Construction, Inc. ("Hausmann"), by and through its counsel of record, for its Complaint against Defendants Woodbury County Law Enforcement Center Authority (the "Authority"), Woodbury County, Iowa ("Woodbury County"), Goldberg Group Architects, LLC ("GGA"), Introba, Inc. ("Introba"), and Baker Mechanical, Inc. d/b/a Baker Group ("Baker Group") (collectively, the "Defendants"), hereby states and alleges as follows:

## PARTIES

1.       Hausmann is a Nebraska corporation with its principal place of business in Lincoln, Lancaster County, Nebraska.

2.       The Authority is a governmental entity located in Sioux City, Woodbury County, Iowa.

3.       Woodbury County is a governmental entity located in Sioux City, Iowa.

4.       GGA is a Missouri limited liability company with its principal place of business in Saint Joseph, Buchanan County, Missouri.

5.    Introba is a Delaware corporation with its principal place of business in St. Louis, St. Louis County, Missouri.

6.    Baker Group is an Iowa limited liability company with its principal place of business in Cedar Rapids, Linn County, Iowa.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and a substantial part of the property that is the subject of the action is situated in this District.

## NATURE OF THE ACTION

9.    This action stems from the design and construction of the Woodbury County Law Enforcement Center at 3701 28th Street, Sioux City, Iowa (the "LEC").

10.    The Authority was created to facilitate the completion of the design and construction of the LEC, and worked with GGA, Introba, Baker Group, and Hausmann to complete this public improvement project (the "Project").

11.    GGA was the architect for the Project.

12.    GGA contracted with Introba to aid in the completion of the architectural designs, plans, and specifications.

13.    Baker Group served as a construction manager for the Project.

14.    Hausmann was the prime or general contractor for the Project.

15.     The LEC that was initially contemplated by the parties in the plans from June 2021, is not the LEC that was constructed and exists today.

16.     Throughout the life of the Project, a multitude of issues have plagued the construction and completion of the LEC, stemming from certain design errors and omissions as put forth by GGA as the lead architect for the Project.

17.     These errors ground the Project to a screeching halt in June 2023, which in turn has delayed almost every subsequent aspect of the Project, increasing the ultimate cost of the Project, and thereby bringing about the above-captioned litigation.

18.     While it is evident that the issues stem from the design errors and omissions, Defendants allege certain parties are liable, with Hausmann bearing the brunt of many of the accusations for the overall delay in completion.

19.     Had the Project not experienced these design errors and omissions, it would have been completed on time, and the LEC would have been operational much earlier.

20.     Notwithstanding the accusations against Hausmann, Hausmann has attempted to facilitate a timely, efficient, and accurate completion of the Project, but has been met with roadblock after roadblock, only furthering the delay in completing the Project.

21.     Notably, these roadblocks are being manufactured at every turn by Defendants to shift the blame of delay onto Hausmann and negatively shape public opinion of Hausmann.

22.     It is well documented that had it not been for the design errors and omissions, the delay would not have occurred.

23.     In fact, the Authority, on November 18, 2024, while claiming it would hold Hausmann liable for the delays, also asserted that there is no denying that there have been substantial design errors from GGA and Introba that have led to the delays in the Project.

24.     The Authority, again, on July 2, 2025, explained that the delay in completion of the Project stems from the design errors of Introba, which have caused alternative sequencing and forced the Authority to incur additional damages.

25.     Notwithstanding the Authority acknowledging on separate occasions that the issues stem from the design of the Project, that the Authority continues to craft its own narrative of the issues plaguing the Project to save GGA, Introba, and Baker Group from incurring additional expenses.

26.     In fact, on July 3, 2025, the Authority sent a "confidential" 22-page joint demand letter with Woodbury County to Hausmann, GGA, and Introba (the "Confidential Demand Letter") for purposes of facilitating settlement discussions.

27.     The Authority and Woodbury County, knowing that the Confidential Demand Letter was subject to an alleged ongoing Freedom of Information Act Request from the media, included various false and defamatory statements against Hausmann regarding Hausmann's performance on the Project.

28.     Almost immediately after the Confidential Demand Letter was sent, the Authority and Woodbury County released the Confidential Demand Letter to the media.

29.     Throughout the course of the Project, the Authority has made numerous other unsubstantiated and false statements and comments to the media about Hausmann's performance on the Project.

30.     Hausmann's other ongoing projects and future projects have been impacted by the Authority's release of the Confidential Demand Letter to the media and the other statements made by the Authority to the media, as numerous news outlets have created damaging articles about Hausmann based on untrue and unsubstantiated allegations in the Confidential Demand Letter.

4

31.     Hausmann's project pursuits have been harmed directly as a result of the misstatements and lack of detail provided in the Confidential Demand Letter and other statements and comments made to the media.

32.     Shortly after the Confidential Demand Letter was sent, Shane Albrecht, member and representative of Baker Group heavily involved in the Project, told various individuals and entities that the letter would be released to the media.  On numerous other occasions during the course of the Project, Hausmann has resorted to finding out about alleged "issues" on the Project through news articles, as the Authority and Baker Group voluntarily chose to release information to the media before talking to Hausmann.

33.     Through investigation, it is apparent that the Authority, GGA, Introba, and Baker Group have very close outside relationships with each other, demonstrating a clear conflict of interest.  This includes, but is not limited to:

      a.     Baker Group is the holder of the patent used by Pauly Jail, which was the only subcontractor that bid for the fabrication and installation of the individual jail cells for the LEC;

      b.     On information and belief, Shane Albrecht, listed as one of the inventors, and/or Baker Group receive certain kickbacks from licensing the above-referenced patent to Pauly Jail;

      c.     Pauly Jail is a GGA-affiliated subcontractor; and

      d.     Baker Group hired the son of an Authority's member to oversee and manage the construction of the Project; and

      e.     The Authority and Baker Group share legal counsel.

34.     Given the cozy relationship between the Authority, GGA, Introba, and Baker Group, it has been easiest for the Authority to blame Hausmann for delays and refuse to pay Hausmann for its completion of the Project and its construction of the LEC so as not to impact, interfere with, or jeopardize the ongoing relationships that Defendants have enjoyed, and likely plan to continue to enjoy.

35.     Beyond, the Authority is also attempting to protect GGA provided that GGA only ensured its work on the Project up to one million dollars ($1,000,000.00), a grossly negligent amount when considering the Project itself was bid for just under sixty million dollars ($60,000,000.00).

36.     Defendants continue to delay completion of the Project by finding purported errors in the work performed by Hausmann; notably, these errors are often discovered during inspections where Defendants intentionally prohibit Hausmann from attending.

37.     Defendants' actions have become a significant hinderance on Hausmann's ability to perform the work it contracted for by continuously creating new work for Hausmann to complete after discovering alleged errors without consulting with Hausmann.

38.     Hausmann continues to incur significant costs and expenses as a result of Defendants collusive actions.

39.     While the parties have attempted to negotiate in good faith, it is unlikely that a resolution can occur without court intervention.

## FACTUAL ALLEGATIONS

### Forming the Project

40.     In or around March 2020, the Authority and GGA entered into the Standard Form of Agreement Between Owner and Architect, AIA Document B132-2009 (the "Architect Agreement").

41.     Under the Architect Agreement, the Authority's program for the Project was to utilize GGA to design and construct a new Law Enforcement Center that would include the sheriff's department, county jail, and courtrooms.

42.     The stated budget for the Project in the Architect Agreement is forty-three million one hundred eighty-four thousand dollars ($43,184,000.00).

43.     The Architect Agreement provides the various services that GGA would provide the Authority for the furtherance and completion of the Project, which include basic services (Sec. 3.1), design development phase services (Sec. 3.3.), construction documents phase services (Sec. 3.4), bidding services (Sec. 3.5), construction phase services (Sec. 3.6), and special facility training and transition services (Sec. 3.7) (collectively, the "Architect Services").

44.     Thereafter, upon information and belief, GGA entered into a subcontract agreement with Introba to aid in the performance of the Architect Services.

45.     On or about July 17, 2020, the Authority and Baker Group entered into the Standard Form of Agreement Between Owner and Construction Manager as Adviser, AIA Document C132-2009 (the "Construction Manager Agreement").

46.     Under the Construction Manager Agreement, the Authority's program for the Project was to be a joint effort of Baker Group and GGA as the Architect to design and construct

7

a new Law Enforcement Center that shall include the sheriff's department, county jail, and courtrooms.

47. The stated amount for the Project in the Construction Manager Agreement is fifty million three hundred thousand dollars ($50,300,000.00) plus two million eight hundred thousand dollars ($2,800,000.00).

48. The Construction Manager Agreement states that the final figure will be determined by bids received and the Authority's approval.

49. The Construction Manager Agreement provides the various services that Baker Group would provide the Authority for the furtherance and completion of the Project, which includes having a experienced representative on site daily who had authority to make decisions on the Project.

50. After entering into the Architect Agreement and the Construction Manager Agreement, the Authority, GGA, Introba, and Baker Group worked together to create certain design documents, including plans, specifications, schematics, and other documents of the like.

51. Thereafter, on April 20, 2021, the Authority fixed a date for receiving bids for the Project and the public improvements therein for May 20, 2021, before 2:30 p.m.

52. On June 14, 2021, the Authority accepted Hausmann's bid for the construction of those certain public improvements in furtherance of the Project, as Hausmann was the lowest responsive, responsible bid received for such work.

53. Hausmann's bid was for fifty-eight million three hundred ninety thousand dollars ($58,390,000.00).

54. On or about June 28, 2021, the Authority and Hausmann entered into Standard Form of Agreement Between Owner and Contractor, AIA Document A101-2017 (the

8

"Construction Agreement"). Attached hereto as "Exhibit A" is a true and accurate copy of the Construction Agreement.

55.     At the time the Authority and Hausmann entered into the Construction Agreement, the Authority and Hausmann agreed to General Conditions of the Contract for Construction AIA Document A201-2007 with certain additions and deletions (the "Conditions of the Contract"). Attached hereto as "Exhibit B" is a true and accurate copy of the Conditions of the Contract.

56.     The contract documents consisted of the Construction Agreement, Conditions of the Contract, Drawings, Specifications, Addenda issued prior to execution of the Construction Agreement, other documents listed in the Construction Agreement, and Modifications issued after execution of the Construction Agreement, all of which form the contract, and are fully a part of the contract as if attached to the Construction Agreement or repeated therein (the "Contract Documents").

57.     Under the Construction Agreement, Hausmann was to perform the work necessary for completion of the Project (the "Work").

58.     Under the Construction Agreement, the Project was to be substantially completed not later than five hundred eighty (580) calendar days from the date of commencement.

59.     The Construction Agreement states that the contract sum shall be fifty-eight million three hundred ninety thousand dollars ($58,390,000.00) (the "Contract Sum").

60.     Hausmann was to be paid based upon applications for payment submitted to GGA for approval and certificate for payment.

61.     The amount of each progress payment was to include:

        a.      That portion of the Contract Sum properly allocable to completed Work;

9

b.     That portion of the Contract sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction, or if approved in advance by the Authority, suitably stored off the site at a location agreed upon in writing; and

c.     That portion of the construction change directives that GGA determines, in GGA's professional judgment, to be reasonably justified.

62.    The amount of each progress payment could then be reduced by:

a.     The aggregate of any amounts previously paid by the Authority;

b.     The amount, if any, for Work that remains uncorrected and for which GGA has previously withheld a certificate of payment as provided in Article 9 of AIA Document A201-2007;

c.     Any amount for which Hausmann does not intend to pay a subcontractor or material supplier, unless the Work has been performed by others Hausmann intends to pay;

d.     For Work performed or defects discovered since the law payment application, any amount for which GGA may withhold payment, or nullify a certificate of payment in whole or in part, as provided in Article 9 of AIA Document A201-2007; and

e.     Retainage withheld pursuant to Section 5.1.7 of the Construction Agreement.

63.     The Construction Agreement provides that for each progress payment made prior to substantial completion of the Work, the Authority may withhold five (5) percent from the payment otherwise due as retainage.

64.     Upon substantial completion of the Work, Hausmann could submit an application for payment that included the retainage withheld from prior applications for payment.

65.     The Construction Agreement further provides that if final completion of the Work is materially delayed through no fault of Hausmann, the Authority shall pay Hausmann any additional amounts in accordance with Article 9 of AIA Document A201-2007.

66.     Final payment, consisting of the entire unpaid balance of the Contract Sum, was to be made by the Authority to Hausmann when:

> a.     Hausmann fully performed the contract except for Hausmann's responsibility to correct work provided in Article 12 of AIA Document A201-2007, and to satisfy other requirements, if any, which extend beyond final payment; and

> b.     A final certificate for payment has been issued by GGA.

67.     On or about June 28, 2021, Hausmann and North American Specialty Insurance Company, as surety, entered into a Performance Bond AIA Document A312-2010 (the "Performance Bond").

68.     On or about June 28, 2021, Hausmann and Westport Insurance Company, as surety, entered into a Payment Bond AIA Document A312-02010 (the "Payment Bond").

**Commencement of Work**

69.     Work on the Project commenced on August 27, 2021 (the "Date of Commencement").

11

70.     For months, Hausmann made progress towards completion of the Project in order to meet the substantial completion deadline of March 27, 2023, five hundred eighty (580) days from the Date of Commencement.

71.     During this time, the Project experienced certain delays, including, but not limited to, issues with the footings and foundation walls.

72.     Based on reasonable information and belief, these certain delays were caused by design issues on the Project.

73.     But for the design issues on the Project, Hausmann would have met the original substantial completion deadline.

74.     These delays resulted in the disruption of certain critical path work, which would result in a delay in reaching substantial completion of the Project.

75.     Hausmann, the Authority, and GGA agreed that the substantial completion deadline would be continued due to these initial issues with the Project.

76.     Following resolution of these initial issues, the substantial completion deadline was continued to September 13, 2023.

**Fire Dampers and Disruption to Substantial Completion**

77.     On or about June 5, 2023, the Project experienced a major halt in its progression due to the discovery of errors in the HVAC systems specified in the applicable contract documents that were all too problematic.

78.     The known issues at that time stemmed from a design omission in certain air transfer ducts which were already installed in the building's HVAC systems.

79.     It is understood that GGA and Introba failed to include fire and fire/smoke dampers in their designs and specifications.

12

80.     To resolve this issue, Hausmann was required to retrofit its Work to ensure that the fire and fire/smoke dampers were installed for the safety and well-being of those individuals residing in the building under the Authority's care and supervision.

81.     In August 2023, Hausmann notified the Authority that delays in rectifying these clear design errors without an appropriate extension of time to the critical path for construction would constructively accelerate the construction effort, force rework, and otherwise expose the Project and the Authority to greater costs.

82.     Notwithstanding Hausmann's warnings, the Authority accelerated the construction effort by issuing Proposal Request ("PR") 35R and Construction Change Directives ("CCD") 5 and 6 to Hausmann obligating its continued contract performance without regard to approved costs or a reasonable extension of time to accommodate the hindrance, interruption, and interference the retrofits imposed on the established workflow.

83.     This issue functionally stopped Hausmann's progress on the previously contracted scope on the Project due to the need to cut into previously finished areas and other demolition to the Work in place to accommodate the damper installation once the materials arrived on site.

84.     The resulting directives from PR 35R caused Hausmann to abandon its effort to complete the base contract scope of Work by the contractual substantial completion date and, as directed by the Authority, refocus its efforts into other activities that could proceed while GGA and Introba worked out the details of the damper installations.

85.     During this time, GGA and Introba had agreed to issue PR 35R2, which they never did, and only clandestinely issued Architect's Supplemental Instruction ("ASI") 009 to clean up the drawings relevant to the damper installation.

13

86.     The omission of the dampers was a clear design error and a life safety threat where occupants could not be evacuated in the event of a fire at the Authority's facility.

87.     The damper issue became the longest scheduling tent pole on the critical path for construction on the project.

88.     The critical path of the Project was disrupted in June 2023 when it was discovered that the fire damper omissions would cause a new critical path on the Project and that the intervening work flowing from GGA and Introba's design errors put a halt on the base scope so as to avoid further financial losses for the Authority and impractical sequencing of work moving forward.

89.     The Authority has acknowledged that the disruption in June 2023 stemmed in large part from the errors in GGA and Introba's designs.

90.     Notwithstanding this, the Authority and GGA have blamed Hausmann for contributing to these delays in what can only be an attempt to displace the burden of blame.

### Subsequent Issues with the Project

91.     Following the damper issue, the Authority, GGA, and Introba issued numerous late-stage changes to previously contracted and completed work, thus extending performance.

92.     Additionally, the Authority, GGA, and Introba began to cobble baseless delay arguments together and unreasonably scrutinize Hausmann's completed Work.

93.     By the end of October 2023, Hausmann had addressed all open items outlined by the Authority, GGA, Introba, and Baker Group, with the bulk of these items pending with the Authority and Baker Group or awaiting further response from GGA and Introba.

94.     In November 2023, the Authority tendered a non-exhaustive list of what it claimed to be concurrent delays on the part of Hausman.

14

95.     The issues delaying completion of the Project stemmed from a litany of work directives Hausmann had received that added scope to the original contemplated Work on the Project.

96.     As a result of the various delays, the Authority has failed to pay Hausmann for the Work it has performed in connection with the Construction Agreement and the additional directives and change orders, claiming that Hausmann's delay of the Project forecloses the Authority's duty to pay Hausmann for its Work.

97.     The delays in the Project are multifaceted and stem, in large part, from GGA and Introba and their insufficient review process on completed work, their failure to coordinate plans, and their inadequate designs, along with weather related events.

98.     Any delay attributed to Hausmann is the direct result of GGA, Introba, and the Authority's actions, including, but not limited to, design changes, differing site conditions, failure to provide adequate design, and withholding material information.

99.     Aside from any delay claims impacting the construction activities and the completion of the Project, Hausmann is still entitled to compensation due to the disruption caused by the rife and continuous design and contract administration issues.

**Reaching Completion of the Project**

100.    On August 16, 2024, Hausmann was issued a Certificate of Substantial Completion of the Project.

101.    Hausmann has not yet received a Certificate of Final Completion even though no further contractual Work is being performed on the Project.

102.    Hausmann demanded that a Certificate of Final Completion be issued, but the Authority and GGA have refused, claiming additional warranty work needs corrected.

103.    The LEC is currently occupied and operational.

104.    To date, Hausmann has not been paid for PR 35R (dampers), PCO 082 (security bars), PR 47R (elevator), PR 49R (mechanical), PR 50R (mechanical), PR 52R (HVAC balancing), PCO 141 (insurance deductibles), PCO 146 (extended warranties), PCO 147 (open house delays), PCCO 028 (various credits), PCO 132 (gate card readers), the final balance of base work, or outstanding retainage.

105.    Hausmann has made numerous demands for payment from the Authority, but the Authority has refused to pay.

106.    In total, Hausmann is owed no less than $5,730,052.46.

107.    Notwithstanding Hausmann completing the Work contemplated under the Contract Documents, the Authority and GGA continue to provide Hausmann with notice of additional items that need to be completed before issuing a Certificate of Final Completion.

108.    Many of these additional items were not contemplated in the Contract Documents.

109.    As the Project approaches the one-year anniversary of attaining Substantial Completion the Authority, through Baker Group, notified Hausmann that it and GGA were scheduling a one-year warranty walk and provided two dates for when this was to be completed.

110.    The Authority, through Baker Group, did not consider any alternative dates recommended by Hausmann to ensure its presence at the one-year warranty walk, to review the Work that Hausmann was warranting, and indicated that it would perform the inspection with GGA, and Hausmann would not be in attendance.

111.    Defendants have made no indication of good faith resolution of the ongoing disputes in this case.

16

112.    Instead, Defendants continue to regularly issue directives and orders for new work, causing Hausmann to incur significant costs in responding to these requests in kind, adding further expense to the amounts Hausmann has yet to be paid.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Authority)

113.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

114.    The Construction Agreement is a valid and enforceable contract between Hausmann and the Authority.

115.    Under the terms of the Construction Agreement, Hausmann was to complete the Work according to the Contract Documents, and the Authority was to pay Hausmann for its labor, materials, and equipment furnished for completion of the Project.

116.    To date, the Authority has refused to remit certain payments to Hausmann based on its perceived concurrent delays to the completion of the Project.

117.    The purported delays to the Project are solely the fault of the Authority, GGA, Introba, and Baker Group.

118.    Under Section 8.3.1 of the Conditions of the Contract, if Hausmann is delayed at any time in the commencement or progress of the Work by an act or neglect of the Authority or GGA, then the time for completion of Project shall be extended for such reasonable time as may be determined, and should these delays be attributable to the Authority, GGA, or the Authority's separate contractors, Hausmann is entitled to monetary damages.

119.    The Authority and GGA have failed to provide reasonable extensions for the delays in the completion of the Work that have resulted from the Authority and GGA's own negligent acts.

120. The Authority's refusal to pay Hausmann for its Work is unreasonable and a breach of the Construction Agreement.

121. As a result of the Authority's Breach, Hausmann has been damaged in an amount to be proven at trial, but no less than $5,730,052.46.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Woodbury County Law Enforcement Center Authority in an amount to be determined at trial, but no less than $5,730,052.46, for amounts owed for the Work performed on the Project and costs, attorney fees, and expenses incurred to try and resolve the issues with Defendants to date, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
### (Authority)

122. Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

123. Hausmann has performed Work on the Project.

124. The Authority has benefited from Hausmann's Work on the Project given the LEC has been completed.

125. The Authority was enriched by Hausmann's Work on the Project to Hausmann's detriment.

126. Hausmann has suffered damages as a result of the Authority's enrichment from Hausmann's unpaid Work on the Project in an amount to be proven at trial.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Woodbury County Law Enforcement Center

Authority in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

### THIRD CAUSE OF ACTION
### Tortious Interference with a Business Relationship or Expectancy
### (Authority)

127. Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

128. Hausmann has a valid business relationship and expectancy with regard to the performance of its work on the Project.

129. The Authority was aware of Hausmann's business relationships and expectancies.

130. As set forth herein, the Authority committed unjustified, intentional acts of interference with said relationship and expectancy when it breached the Contract, hindering Hausmann's ability to perform the remainder of the Project in a timely manner and interfering with its relationships with its subcontractors in a direct attempt to harm Hausmann and its business relationships and expectancies.

131. The interference by the Authority is the proximate and actual cause of harm to Hausmann business relationships and expectancies, both current and future, and other damages.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Woodbury County Law Enforcement Center Authority in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

19

## FOURTH CAUSE OF ACTION
## Professional Negligence
## (GGA)

132.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

133.    GGA is engaged in the business of providing architectural services, including, but not limited to, preparation of architectural designs, plans, and specifications, overseeing the construction of construction projects, and administration of construction projects.

134.    GGA was engaged by the Authority to provide its architectural services in completion of the Project, by, and without limitation, preparing the architectural designs, plans, and specifications necessary to build the LEC for the Project, oversee Hausmann's construction of the Project, and serve as an administrator for the Project.

135.    GGA had a professional duty to design and prepare the architectural designs, plans, and specifications, oversee Hausmann's construction of the Project, and serve as an administrator for the Project.

136.    GGA breached its professional duty by failing to prepare architectural designs, plans, and specifications that included the requisite fire and fire/smoke dampers in the mechanical systems in the LEC, other errors, omissions, and issues with the designs, plans, and specifications, failing to adequately oversee Hausmann's construction of the Project, and failing to adequately serve as an administrator for the Project.

137.    Hausmann relied on GGA's Project designs, plans, and specifications.

138.    GGA knew or should have known that Hausmann would rely upon the Project designs, plans, and specifications.

139.    Hausmann has been damaged by GGA's breach of its duty by incurring additional costs in the performance of its Work on the Project in an amount to be proven at trial.

20

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Goldberg Group Architects, LLC in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with a Business Relationship or Expectancy**
**(GGA)**

140.   Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

141.   Hausmann and the Authority have a valid business relationship and expectancy with regard to the performance of the Work and completion of the Project and the contractual obligations identified in the Contract Documents.

142.   GGA was expressly aware of Hausmann and the Authority's business relationship and expectancy.

143.   As set forth herein, GGA committed unjustified, intentional acts of interference with said relationship and expectancy.

144.   The interference by GGA was the proximate and actual cause of harm to Hausmann and the Authority's business relationship and expectancy, and other damages.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Goldberg Group Architects, LLC in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## SIXTH CAUSE OF ACTION
### Professional Negligence
### (Introba)

145.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

146.    Introba is engaged in the business of providing architectural services, including, but not limited to, the preparation of architectural designs, plans, and specifications, and providing expertise on mechanical systems.

147.    Introba was engaged by the GGA to provide its architectural services in completion of the Project, by, and without limitation, helping to prepare the architectural designs, plans, and specifications necessary to build the LEC for the Project, and provide its expertise concerning mechanical systems.

148.    Introba had a professional duty to help design and prepare GGA's architectural designs, plans, and specifications, and provide its expertise concerning mechanical systems.

149.    GGA breached its professional duty by failing to help prepare architectural designs, plans, and specifications that included the requisite fire and fire/smoke dampers in the mechanical systems in the LEC, other errors, omissions, and issues with the designs, plans, and specifications and by failing to provide its expertise in mechanical systems.

150.    Hausmann relied on GGA's Project designs, plans, and specifications, and Introba's knowledge of mechanical systems.

151.    Introba knew or should have known that Hausmann would rely upon GGA's Project designs, plans, and specifications, and Introba's mechanical systems expertise.

152.    Hausmann has been damaged by Introba's breach of its duty by incurring additional costs in the performance of its Work on the Project in an amount to be proven at trial, but no less than $5,730,052.46.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Introba, Inc. in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship or Expectancy
### (Introba)

153.     Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

154.     Hausmann and the Authority have a valid business relationship and expectancy with regard to the performance of the Work and completion of the Project and the contractual obligations identified in the Contract Documents.

155.     Introba was expressly aware of Hausmann and the Authority's business relationship and expectancy.

156.     As set forth herein, Introba committed unjustified, intentional acts of interference with said relationship and expectancy.

157.     The interference by Introba was the proximate and actual cause of harm to Hausmann and the Authority's business relationship and expectancy, and other damages.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Introba, Inc. in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## EIGHTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship or Expectancy
### (Baker Group)

158.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

159.    Hausmann and the Authority have a valid business relationship and expectancy with regard to the performance of the Work and completion of the Project and the contractual obligations identified in the Contract Documents.

160.    Baker Group was expressly aware of Hausmann and the Authority's business relationship and expectancy.

161.    As set forth herein, Baker Group committed unjustified, intentional acts of interference with said relationship and expectancy.

162.    The interference by Baker Group was the proximate and actual cause of harm to Hausmann and the Authority's business relationship and expectancy, and other damages.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Baker Mechanical, Inc. d/b/a Baker Group in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## NINTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship or Expectancy
### (Authority and Woodbury County)

163.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

164.    Hausmann has a valid business relationship and expectancy with regard to the performance of various construction projects unrelated to the Project at issue, including the construction of a new prison in Nebraska.

24

165.    The Authority and Woodbury County are aware of Hausmann's business relationships and expectancy.

166.    As set forth herein, the Authority and Woodbury County committed unjustified, intentional acts of interference with said relationship and expectancy when drafting an unsubstantiated and false Confidential Demand Letter and releasing the same to various media sources in a direct attempt to harm Hausmann and its business relationships and expectancies.

167.    The Authority has also committed unjustified, intentional acts of interference with Hausmann's relationships and expectancies when making other false and defamatory statements about Hausmann in other comments to the media.

168.    Hausmann's project pursuits have been harmed directly as a result of the misstatements and lack of detail provided in the Confidential Demand Letter and in other various comments made by the Authority to the media.

169.    The interference by the Authority and Woodbury County is the proximate and actual cause of harm to Hausmann business relationships and expectancies, both current and future, and other damages.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Woodbury County Law Enforcement Center Authority and Woodbury County, Iowa in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

25

## TENTH CAUSE OF ACTION
## Violation of Iowa Code § 573.12
## (Authority)

170.    Hausmann incorporates the foregoing paragraphs as if fully set forth herein.

171.    As described above, the Authority has failed to timely pay Hausmann for the Work it has completed for the Project.

172.    Under Iowa Code § 573.12, payment should be issued to a contractor within no more than thirty (30) days of receipt of a request for payment, unless there is an articulated and credible excuse for nonpayment.

173.    Failure to issue this prompt payment shall result in the accrual of interest up until the date actual payment is made.

174.    The Authority has failed to provide articulated and credible reasons for nonpayment of the amounts owed to Hausmann for its completion of Work on the Project.

175.    To date, Hausmann has not been paid $5,730,052.46.

176.    Under Iowa Code § 573.12, Hausmann is entitled to its attorney fees and interest on the unpaid amount until payment is made by the Authority.

WHEREFORE, Plaintiff Hausman Construction, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Woodbury County Law Enforcement Center Authority in an amount to be determined at trial, plus pre-judgment interest and post-judgment interest at the maximum legal rate, for an award of costs and attorney fees and for such other, further, and alternative relief as this Court deems just and equitable.

## JURY DEMAND

Hausmann Construction, Inc. hereby demands a trial by jury on all issues so triable.

Dated this 13th day of August, 2025.

26

HAUSMANN CONSTRUCTION, INC.,
Plaintiff,

By: */s/ Tiffany S. Beerman*
    Brenda K. Smith, #AT0013599
    Tiffany S. Beerman, #AT0013913
    Dvorak Law Group, LLC
    9500 W. Dodge Rd., Ste. 100
    Omaha, NE 68114
    402-934-4770
    402-933-9630 (facsimile)
    bsmith@ddlawgroup.com
    tbeerman@ddlawgroup.com

Attorneys for Plaintiff