# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

HAUSMANN CONSTRUCTION, INC.,

Plaintiff,

vs.

WOODBURY COUNTY LAW
ENFORCEMENT CENTER
AUTHORITY, et al.,

Defendants.

No. C25-4041-LTS

**MEMORANDUM
OPINION AND ORDER**

## I.    INTRODUCTION

This matter is before me on motions (Docs. 39, 41) to dismiss filed by defendants Introba, Inc. (Introba) and Goldberg Group Architects, LLC (Goldberg Group) and a joint motion (Doc. 40) to dismiss filed by defendants Woodbury County Law Enforcement Authority (the Authority) and Woodbury County, Iowa (the County).[1] Plaintiff Hausmann Construction, Inc. (Hausmann) has resisted all three motions. Docs. 43-45. The defendants have replied. Docs. 46-48. Oral argument is not necessary. *See* LR 7(c).

## II.    PROCEDURAL HISTORY

Each of the above-listed defendants seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). The County defendants also seek dismissal under Rule 12(b)(1), arguing that Hausmann had not properly pleaded subject matter jurisdiction. Doc. 40. I directed Hausmann to file a second amended complaint curing the defects in subject

---

[1] I will refer to the Authority and the County collectively as the County defendants.

matter jurisdiction.  Doc. 49.  The second amended complaint (Doc. 55) has properly pleaded subject matter jurisdiction.

## III.  *BACKGROUND*

This lawsuit, which invokes the court's diversity jurisdiction under 28 U.S.C. § 1332, involves disputes arising from the construction of the Woodbury County Law Enforcement Center (the Project).  Doc. 55 at 2 ¶¶ 7-10.  Goldberg Group was the Project's architect and contracted with Introba to complete architectural work.  *Id*. at ¶¶ 11-12.  Baker Mechanical, Inc. (doing business as Baker Group) managed the Project's construction and Hausmann was the general contractor.  *Id*. at ¶¶ 13-14.

Hausmann alleges the following claims:

- Count I – breach of contract against the Authority
- Count II – unjust enrichment against the Authority
- Count III – tortious interference with a business relationship or expectancy against the Authority
- Count IV – professional negligence against Goldberg Group
- Count V – tortious interference with a business relationship or expectancy against Goldberg Group
- Count VI – professional negligence against Introba
- Count VII – tortious interference with a business relationship or expectancy against Introba
- Count VIII – tortious interference with a business relationship or expectancy against Baker Group
- Count IX – tortious interference with a business relationship or expectancy against the County defendants
- Count X – violation of Iowa Code § 573.12 against the Authority.

Doc. 55 at 17-26.  I will recount additional facts as necessary in the applicable sections.

## IV.    APPLICABLE STANDARDS

### A.    Effect of Second Amended Complaint

"[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot." *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading . . . . To hold otherwise would be to exalt form over substance." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.)).

In this case, after the County defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), I directed Hausmann to file a second amended complaint changing only the allegations addressing subject matter jurisdiction. Doc. 49 at 2. Because Hausmann has made these changes only, I will treat the defendants' motions to dismiss as directed at the second amended complaint.[2]

### B.    Motion to Dismiss

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[2] Because of the limited changes between the amended and second amended complaint, when the parties cite to the amended complaint, I will list this as the second amended complaint for clarity.

3

544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for

summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406 at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## V. DISCUSSION

The Authority, the County, Goldberg Group and Introba seek dismissal of the respective unjust enrichment, tortious interference and professional negligence claims against them. I will address each claim in turn.

5

### A.      Count II – Unjust Enrichment

The Authority moves to dismiss Hausmann's unjust enrichment claim.  Doc. 40-1 at 12-15.  "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation."  *State ex rel. Palmer v. Unisys. Corp.*, 637 N.W.2d 142, 154 (Iowa 2001).  A claim of unjust enrichment under Iowa law is comprised of the following three elements: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances."  *Id.* at 154-55.  Under Iowa law, "[g]enerally the existence of a contract precludes the application of the doctrine of unjust enrichment."  *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990).  "A party is not barred from pleading unjust enrichment in the alternative to a breach of contract claim when the existence and terms of a contract are in dispute."  *Meardon v. Reg.*, 994 F.3d 927, 936 (8th Cir. 2021) (applying Iowa law).

The Authority argues that Hausmann's unjust enrichment claim fails as a matter of law because it covers the same substance as Hausmann's breach of contract claim and Hausmann does not dispute the validity of the construction contract.  Doc. 40-1 at 14.  Hausmann argues its unjust enrichment claim remains viable as an alternative theory because it is unclear "whether the Authority disputes this fact."  Doc. 43 at 15.  Hausmann maintains that dismissal of its unjust enrichment claim would be inappropriate "[u]ntil there is either a judicial determination or an affirmative admission as to the existence of a valid and enforceable contract."  *Id.* at 16.

In response, the Authority notes "an unjust enrichment claim is only a viable alternative claim at the pleading stage 'if there was not an enforceable contract' covering the same subject matter."  Doc. 46 at 8 (quoting *Fialkoff v. Vgm Grp., Inc.*, No. 19-CV-2041, 2020 WL 10486716, at *7 (N.D. Iowa Aug. 10, 2020)).  The Authority also states, "the Authority submits the attached affidavit . . . confirming the Authority's position that the Construction Agreement is valid and enforceable (and that it intends to enforce the

6

terms of the Construction Agreement through its counterclaims against Hausmann should this Motion to Dismiss not be granted in full)." Doc. 46 at 9.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A "court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003). I decline to consider the affidavit and turn this motion to dismiss into a motion for summary judgment. As such, dismissal of the unjust enrichment claim is inappropriate at this time and I will allow the alternative claim to remain.

### B.      *Counts III, V, VII and IX – Tortious Interference*

Hausmann brings tortious interference claims against the County defendants, Goldberg Group and Introba. Doc. 55. The elements of tortious interference with contract under Iowa law are:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

*Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001) (quoting *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997)). "Iowa courts apply the Restatement (Second) of Torts in analyzing intentional interference claims." *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 504 (8th Cir. 2020) (citing *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 662 (Iowa 2008)). In addition to interference with established contractual relationships, Iowa law "recognize[s], as a tort, interference with prospective contractual relationships." *Iowa Coal Min. Co. v. Monroe Cnty.*, 555 N.W.2d 418, 437 (Iowa 1996)

### 1.      *Counts III and IX – County Defendants*

The County defendants argue Hausmann fails as to the first element of tortious interference in both Counts III and IX.  Doc. 40-1 at 9-12.  "As to the first element, a plaintiff is not required to allege at the pleading stage an existing or prospective contract or business relation with a specific individual or entity; alleging an identifiable class of individuals or entities is sufficient." *Seneca Cos. v. D&H United Fueling Sols., Inc.*, 767 F. Supp. 3d 860, 883-84 (S.D. Iowa 2024) (citing *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 934 F. Supp. 2d 1026, 1049 (N.D. Iowa 2013)) (noting that while the Iowa Supreme Court has not addressed the third-party relationship requirement, persuasive authority from other jurisdictions "have held that the prospective relationship may be with an identifiable class of third persons, not just an identified third person"); *see also Duncan v. Int'l Markets Live, Inc.*, No. 420-CV-00017, 2020 WL 4369632, at *7 (S.D. Iowa May 6, 2020) (Plaintiff "need not allege a prospective relationship with a specific person; alleging a prospective relationship with an identifiable class of individuals is sufficient.").

Courts in this district have "found that a plaintiff need not name the parties with whom it allegedly had contractual relations, as long as 'an identifiable class of third persons' is ascertainable from the complaint." *CRST Expedited, Inc. v. J.B. Hunt Transp., Inc.*, No. 17-CV-26, 2018 WL 1369918, at *6 (N.D. Iowa Mar. 15, 2018) (quoting *Hawkeye Land Co. v. ITC Midwest LLC*, 125 F. Supp. 3d 885, 894 (N.D. Iowa 2015)).  In *CRST Expedited*, the plaintiff failed "to identify the time period at issue" in its complaint.  2018 WL 1369918, at *7.  The court found that without a specified time period, the "plaintiff ha[d] failed to show that an identifiable class of third persons is at issue." *Id.*  However, the court allowed the claim to proceed, reasoning that by "reading the complaint liberally" it could "determine that a set of facts exists under which a claim for relief would be possible." *Id.*

In Count III, Hausmann claims that "the interference by the Authority is the proximate and actual cause of harm to Hausmann['s] business relationships and

8

expectancies, both current and future, and other damages." Doc. 55 at 19 ¶ 131. In Count IX, it alleges that it "ha[d] a valid business relationship and expectancy with regard to the performance of various construction projects unrelated to the Project at issue, including the construction of a new prison in Nebraska." *Id.* at 24 ¶ 164. It alleges that the County defendants knew about its "business relationships and expectancy." *Id.* at 25 ¶ 165. Hausmann alleges that "the interference by the Authority and Woodbury County is the proximate and actual cause of harm to Hausmann['s] business relationships and expectancies, both current and future, and other damages." *Id.* ¶ 169.

The Authority argues that Hausmann has not identified "any specific current or prospective contract the Authority interfered with in Count III." Doc. 40-1 at 11. Next, the Authority contends that "[t]o the extent that Hausmann asserts the Authority interfered with Hausmann's ability to perform the contract between them, its tortious interference claim is not legally cognizable because the Authority is not a third party to their contract." *Id.* The Authority further argues that dismissal is warranted because although "Hausmann alleges the Authority interfered in Hausmann's relationships with subcontractors on this Project," the claim is too vague and fails to "identify with any specificity the individual or entity or class of individuals or entities with whom Hausmann had a current or prospective relationship and with whom the Authority allegedly interfered." *Id.* at 12.

Hausmann does not address the Authority's argument that it could not have interfered with its own contract with Hausmann. Doc. 43 at 13-14. However, Hausmann resists by arguing that it has provided an identifiable class of third parties because the Authority has "identif[ied] the precise business relationships and expectancies which Hausmann contends their interference has impacted." *Id.* at 13. Hausmann argues that it has provided enough information for the Authority "to explore and establish a defense to Hausmann's claims through discovery." *Id.* at 14.

The Authority responds by arguing that "[i]t is far from clear that Hausmann's claim is cabined just to its relationships with its subcontractors on this Project" and might

9

"cover any relationship Hausmann has ever had at any time with any party." Doc. 46 at 6. It also argues that even if the complaint is read narrowly to only relate to subcontractors on the Project, it is unclear whether "this claim is limited to subcontracts related to the Project." *Id.* Next, the Authority argues that because the "Project had dozens of major subcontractors, not even considering minor subcontractors," the claim "is sprawling, vague, improperly pled, and should be dismissed." *Id.* at 7.

The Authority is correct that any interference it might have committed in its contract with Hausmann cannot be the basis for a tortious interference claim because this interference must involve a contract with a third party. *See Green v. Racing Ass'n of Cent. Iowa,* 713 N.W.2d 234, 243 (Iowa 2006) ("plaintiff had a contract with a third-party"). Therefore, this aspect of the claim must be dismissed.

The allegations Hausmann has pleaded are vague and lack a time period which, like in *CRST Expedited*, makes it difficult to ascertain an identifiable class. However, dismissal on this basis is a high bar. For example, in *Hawkeye Land Co.,* the court held that the plaintiff's "prospective business relationships with third parties to develop utility projects on its property in Franklin County, Iowa," was "an identifiable class of third persons." 125 F. Supp. 3d at 894 (citation omitted); *see also Hagen*, 934 F. Supp. 2d at 1049 (finding that "prospective business relationship with persons seeking medical care in Minnesota and Wisconsin" constituted an identifiable third party); *Seneca Cos.*, 767 F. Supp. 3d at 885 ("Seneca's allegations are sufficient to identify the class of current and prospective customers D&H tortiously interfered with as those retail fueling customers throughout the Midwest whose information D&H accessed pursuant to the confidentiality agreement.").

Here, the class would include business relationships centered on providing construction services. Although this class is loosely defined, I find that Hausmann has sufficiently identified a class of third persons for Count III to survive the motion to dismiss stage except as I have stated above.

In Count IX, Hausmann alleges that it "has a valid business relationship and expectancy with regard to the performance of various construction projects unrelated to the Project at issue, including the construction of a new prison in Nebraska." Doc. 55 at 24 ¶ 164. Hausmann further alleges that the County defendants' interference "is the proximate and actual cause of harm to Hausmann['s] business relationships and expectancies, both current and future." *Id*. at 25 ¶ 169. Although this class is also loosely defined, I find that it likewise survives the motion to dismiss.

### 2.      *Counts V and VII – Goldberg Group and Introba*

Because the same factual allegations underpin the allegations against both Goldberg Group and Introba, I will recount them here. Hausmann argues that Goldberg Group and Introba "committed unjustified, intentional acts of interference" with the relationship and expectancy between Hausmann and the Authority. Doc. 55 at 21, 23 ¶¶ 143, 156. In support of this, Hausmann alleges the following facts:

The defendants created delays to "shift the blame of delay onto Hausmann and negatively shape public opinion of Hausmann." *Id*. at 3 ¶ 21. These delays resulted from design errors and omissions. *Id*. ¶ 22. The Authority blamed Goldberg Group and Introba for the delays, "while claiming it would hold Hausmann liable for the delays." *Id*. ¶ 23. While the Authority has acknowledged "that the issues stem from the design of the Project, [] the Authority continues to craft its own narrative of the issues plaguing the Project to save [Goldberg Group], Introba, and Baker Group from incurring additional expenses." *Id*. at 4 ¶ 25.

The defendants have close outside relationships that have created conflicts of interest and have led them to shift blame to Hausmann.[3] *Id*. at 5-6 ¶¶ 33-34. The

---

[3] Although Introba argues that Hausmann did not allege that it had close relationships with the other defendants and resulting conflicts of interest (Doc. 39-1 at 19), the second amended complaint states "[I]t is apparent that the Authority, [Goldberg Group], Introba, and Baker Group

11

Authority seeks to protect Goldberg Group because Goldberg Group insufficiently insured the Project. *Id.* at 5 ¶ 35. The defendants continue to delay the Project's completion by finding errors in Hausmann's work while performing inspections that they prohibit Hausmann from attending. *Id.* ¶ 36. The defendants' actions have prevented Hausmann from performing the work it contracted for. *Id.* ¶ 37.

After issues with the design of fire dampers in the building, Goldberg Group secretly modified the drawings relevant to the dampers. *Id.* at 13 ¶ 85. These damper issues significantly delayed the project. *Id.* ¶ 87. After the damper issue, the Authority, Goldberg Group and Introba extended performance by issuing late-stage changes to already completed and contracted work. *Id.* at ¶ 91. In addition to these changes, the Authority, Goldberg Group and Introba cobbled "baseless delay arguments together and unreasonably scrutinize[d] Hausmann's completed [w]ork." *Id.* at ¶ 92. The Project's delay stems in large part from Goldberg Group and Introba "and their insufficient review process on completed work, their failure to coordinate plans, and their inadequate designs, along with weather related events." *Id.* at 15 ¶ 97.

Under Iowa law, "[t]he intent to interfere with a contract does not make the interference improper." *Green*, 713 N.W.2d at 244 (citing *Berger v. Cas' Feed Store, Inc.,* 543 N.W.2d 597, 599 (Iowa 1996)). Indeed, "a party does not improperly interfere with another's contract by exercising its own legal rights in protection of its own financial interests." *Berger*, 543 N.W.2d at 599. To demonstrate "improper" interference, a plaintiff must prove that the defendant had "a predominant purpose of causing injury" to the plaintiff. *Id*. at 599-600. Courts consider the following factors to determine if the challenged conduct was improper:

1. The nature of the conduct.
2. The Defendant's motive.
3. The interests of the party with which the conduct interferes.

---

have very close outside relationships with each other, demonstrating a clear conflict of interest." Doc. 55 at 5 ¶ 33.

4. The interest sought to be advanced by the Defendant.
5. The social interests in protecting the freedom of action of the Defendant and the contractual interests of the other party.
6. The nearness or remoteness of the Defendant's conduct to the interference.
7. The relations between the parties.

*Green*, 713 N.W.2d at 244 (Iowa 2006); *see also Gen. Elec. Cap. Corp. v. Com. Servs. Grp., Inc.*, 485 F. Supp. 2d 1015, 1026 (N.D. Iowa 2007) (noting that impropriety is determined by evaluating these seven factors).

### a. Goldberg Group

Goldberg Group contends that Hausmann's tortious interference claim against it must be dismissed because Hausmann "has not alleged any facts that establish [Goldberg Group] intentionally interfered with the contract between [Hausmann] and the Authority." Doc. 41-1 at 11-12. Rather, Goldberg Group argues that Hausmann's allegations are grounded in negligence and that Hausmann's characterization of these actions as "intentional" is conclusory. *Id.* at 12-13.

In its resistance, Hausmann argues that it has pleaded that Goldberg Group intentionally interfered with the contract between Hausmann and the Authority. Doc. 45 at 13-14. Hausmann contends that Goldberg Group reads the amended complaint too narrowly and "ignores the entirety of Hausmann's Amended Complaint, which clearly satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Id.* Hausmann argues that it:

> has alleged that among the other Defendants, [Goldberg Group] continues to delay completion of the Project due to manufacturing problems, failing to issue certifications of completion, failing to issue certain work orders that would have expedited the construction process, creating baseless delay arguments, and waiting months to issue certifications of completion, all things which directly impacted Hausmann's ability to complete the work/project.

13

*Id.* at 14 (citing Doc. 55 at ¶¶ 21-22, 36-37, 85, 91-93, 97).  Hausmann contends that it is plausible that Goldberg Group intentionally interfered with the contract between Hausmann and the Authority and that the facts "'raise a reasonable expectation that discovery will reveal evidence' of the intentional interference."  Doc. 45 at 14 (quoting *Twombly*, 550 U.S. at 556).  Hausmann asserts that it has pleaded that Goldberg Group, "amongst other defendants, has a financial interest in offsetting its liability for the underlying design defects by manufacturing delay damages."  Doc. 45 at 14.

In response, Goldberg Group argues that Hausmann "fails to point to one specific allegation of intentional conduct" by Goldberg Group.  Doc. 48 at 6.  Goldberg Group asserts that the allegations "are, at best, negligent in nature" and argues that the idea "that financial incentives motivated this alleged negligence is implausible."  *Id.*

Most of the conduct that Hausmann alleges rings of professional negligence, rather than intentional action.  But when taking all reasonable inferences in favor of Hausmann, I find that Hausmann has plausibly pleaded that Goldberg Group intentionally interfered with the contract by creating baseless delay arguments and unreasonably scrutinizing Hausmann's work.  Although neither Hausmann nor Goldberg Group has addressed the *Green* factors, when those factors are applied it is plausible that the interference was improper.  Because when taking reasonable inferences in favor of Hausmann, I find that it is plausible that Goldberg Group intentionally and improperly interfered with the contract between Hausmann and the Authority, dismissal is not warranted at this time.

### b.    *Introba*

Introba argues that Hausmann has failed to properly plead the third and fourth elements of tortious interference.  Doc. 39-1 at 18-22.  Because Hausmann has alleged that Introba committed essentially the same actions as Goldberg Group, I find that

14

dismissal is not warranted on the failure to plead intentional and improper interference alone. However, Introba raises two additional arguments.[4]

Introba argues that Hausmann has failed to plead that Introba caused the Authority not to perform. Doc. 39-1 at 20. Introba argues that "The Authority's refusal to pay is attributed to 'perceived concurrent delays' ([Doc. 55], ¶ 116), the Authority's own decision to blame Hausmann for delays (*id.*, ¶ 90), and the coordinated actions of the Authority, [Goldberg Group], and Baker Group (*id.*, ¶¶ 26–34)." Doc. 39-1 at 20. Although Hausmann claims that Authority acknowledged that "substantial design errors from [Goldberg Group] and Introba [] led to delays in the Project" (Doc. 55 at 3 ¶ 23), Introba argues that Hausmann has not pleaded any factual support that "Introba improperly caused the Authority's refusal to pay Hausmann." Doc. 39-1 at 20. Taking reasonable inferences in Hausmann's favor, it is plausible that Introba's actions caused the Authority to refuse to pay Hausmann because Hausmann has alleged that Introba, along with the other defendants, created "baseless delay arguments [] and unreasonably scrutinize[d] Hausmann's completed Work." Doc. 55 at 14 ¶ 92.

Introba also argues that "Hausmann's tortious interference claim against Introba fails" because "Introba cannot tortiously interfere with a contract to which its principal is a party." Doc. 39-1 at 21. Hausmann alleges that Introba intentionally interfered with the business relationship between Hausmann and the Authority. Doc. 55 at 23 ¶¶ 154-56. As stated above, Goldberg Group contracted with Introba to perform architectural work. Goldberg Group also entered a contract with the Authority, which states:

---

[4] In its reply brief, Introba argues for the first time that because many of Hausmann's "allegations are directed at the collective conduct of all defendants – not at Introba specifically," the allegations surmise impermissible group pleadings and must be dismissed because they fail to give Introba notice about the conduct Hausmann alleges against it. Doc. 47 at 5. Issues raised for the first time in a reply are typically considered waived. *See Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time … in a reply brief."). I decline to consider this issue at this time.

15

> [Goldberg Group] will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

Doc. 55-2 at 21 § 4.2.1. Citing the architectural work it performed, Introba argues that all its conduct was "squarely within the scope of Introba's role as a subconsultant to [Goldberg Group], the Authority's contractual representative. Doc. 39-1 at 21. Introba contends that because its "alleged conduct was performed in furtherance of [Goldberg Group's] obligations as the Authority's agent, Introba is not a 'stranger' to the Construction Agreement and cannot be held liable for tortious interference with it." *Id.* at 22. Introba argues that "[t]o the extent Introba's design work caused harm, Hausmann's remedy, if any, lies against the Authority for breach of the Construction Agreement – not against the Authority for tortious interference with it." *Id.*

Hausmann's allegations are not limited to poor design work. As discussed above, Hausmann has also alleged that Introba intentionally and improperly interfered with the contract by creating "baseless delay arguments [] and unreasonably scrutiniz[ing] Hausmann's completed [w]ork." Doc. 55 at 14 ¶ 92. Taking reasonable inferences in Hausmann's favor, by intentionally and improperly interfering with the contract, Introba acted beyond the scope of the contractual agreement and was not acting as a party to the contract. Thus, dismissal is inappropriate on this basis.

## C. Counts IV and VI – Professional Negligence

Goldberg Group and Introba argue that Hausmann's professional negligence claims against them are barred by the economic loss rule because Hausmann has asserted only economic losses. Doc. 41-1 at 7; Doc. 39-1 at 9. "As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011) (quoting *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124,

16

126 (Iowa 1984)).  Stated another way, "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."  *Neb. Innkeepers, Inc.*, 45 N.W.2d at 126 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)).  The rule applies even if there is no contractual privity between the parties.  *Annett Holdings*, 801 N.W.2d at 504.

Iowa has recognized only three exceptions to the economic loss doctrine: (1) "actions asserting claim of professional negligence against attorneys and accountants," (2) "negligent misrepresentation claims" and (3) "when the duty of care arises out of a principal-agent relationship."  *Id.* at 504.  Hausmann argues that the professional negligence exception applies here.

Both Goldberg Group and Introba argue that Hausmann has alleged only economic losses.  Doc. 39-1 at 12-14; *see* Doc. 41-1 at 7-9.  Hausmann claims it has been damaged by Goldberg Group and Introba's breach of their duties "by incurring additional costs in the performance of its Work on the Project."  Doc. 55 at 20, 22 ¶¶ 139, 152.  These additional costs are comprised only of unpaid contract balances, costs from "additional directives and change orders" and additional performance expenses.  *Id.* at 15-16 ¶¶ 96, 99, 104-06.  Hausmann has not alleged that the breach physically injured anyone or that property was damaged.[5]  *See id. generally*.

In determining whether loss is purely economic, the Iowa Supreme Court has stated "the line to be drawn is one between tort and contract rather than between physical harm and economic loss . . . .  When, as here, the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract."  *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000) (quoting *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988)) (alterations in

---

[5] Introba argues that "[t]o the extent Hausmann may argue that the design errors caused delay and disruption . . . such allegations do not transform economic losses into non-economic ones." Doc. 39-1 at 13.  Hausmann does not address this argument.  Doc. 44 at 8-12.

original).  Iowa courts analyze "'the nature of the defect, the type of risk, and the manner in which the injury arose' as well as 'the type of damages that the plaintiff seeks to recover.'"  *Annett Holdings, Inc.*, 801 N.W.2d at 506 (quoting *Determan*, 613 N.W.2d at 263).  In *Yakel v. Wheeler*, 10 N.W.3d 622 (table), 2024 WL 3290371 (Iowa Ct. App. 2024), the Iowa Court of Appeals applied these factors and found a claim based on disappointed expectations with construction quality was mere economic loss with relief "grounded in contract law, not tort law."  *Id.* at \*7.  In this case, Hausmann's claims stem from "disappointed expectations" related to the alleged poor quality of the work performed by Goldberg Group and Introba.  These are economic losses situated in contract, rather than tort law.[6]

The Iowa Supreme Court has stated that "purely economic losses are recoverable in actions asserting claims of professional negligence against attorneys and accountants." *Annett Holdings, Inc.*, 801 N.W.2d at 504.  Federal courts in Iowa have exempted professional negligence claims against licensed architects, *Burns Philp Inc. v. Cox, Kliewer & Co.*, No. 4-99-CV-90033, 2000 WL 33361992, at \*8 (S.D. Iowa Nov. 2, 2000), and engineers.  *Penford Prods. Co. v. Schneider Structural Eng'g, Inc.*, No. 1:09-cv-00037, 2010 WL 11469649, at \*2 (N.D. Iowa Sept. 3, 2010).  Other federal courts have found that under Iowa law, "[t]he economic loss rule does not apply to claims of professional negligence."  *John T. Jones Const. Co. v. Hoot Gen. Const.*, 543 F. Supp. 2d 982, 1009 (S.D. Iowa 2008), *aff'd sub nom. John T. Jones Const. Co. v. Hoot Gen. Const. Co.*, 613 F.3d 778 (8th Cir. 2010) (citing *Kemin Indus. Inc. v. KPMG Peat Marwick L.L.P.*, 578 N.W.2d 212, 221 (Iowa 1998)); *Floyd Cnty. Bd. of Supervisors v. Prochaska & Assocs., Inc.*, No. 21-CV-2043, 2022 WL 19000605, at \*10 (N.D. Iowa

---

[6] Hausmann does not appear to contest that its losses are economic in nature, stating "[e]ven if Hausmann's losses are mostly economic in nature," its professional negligence claims "should not be dismissed because claims for professional negligence are exempt from the economic loss doctrine."  Doc. 44 at 8.  I will address this argument below.

18

Nov. 30, 2022) ("The economic loss doctrine, however, does not apply to cases of professional negligence.") (citing *Kemin Indus. Inc.*, 578 N.W.2d at 221).

Although Iowa federal courts have extended the professional negligence exception to all professions, the Iowa Supreme Court has expressly applied the exception only to attorneys and accountants. *See Van Sickle Const. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 693 n.5 (Iowa 2010) ("[P]urely economic losses are recoverable in actions asserting claims of professional negligence against attorneys and accountants."); *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 98 n.4 (Iowa 2012) (noting "that the professional negligence qualification may extend to insurance agents, as well as attorneys or accountants" without deciding because the parties did not brief issue).

Hausmann concedes that the Iowa Supreme Court has never applied the exception to engineers or architects, noting it has not ruled on "the validity of the architect and engineer exception." *See* Doc. 44 at 9. The Iowa Court of Appeals has twice considered whether the exception applies to engineers. In *Ziel v. Energy Panel Structures, Inc.*, 949 N.W.2d 653 (table), 2020 WL 4498064 (Iowa Ct. App. 2020), the court did not apply the economic loss rule exception to engineers, stating "no case has exempted engineering negligence from the economic loss rule." *Id.* at *6. In *Gerdts v. Donan Eng'g Co.*, 4 N.W.3d 464 (table), 2024 WL 257009 (Iowa Ct. App. 2024), the Iowa Court of Appeals "adhere[d] to the reasoning in *Ziel*," and like in *Ziel*, did not include engineers in the exception because there was "no binding authority to do so." *Id.* at *5. In her concurrence, Judge Tabor stated, "this case also presents a good opportunity for the [Iowa Supreme Court] to clarify whether engineering negligence is exempt from the economic loss rule." *Id.* at *12. The Iowa Supreme Court declined to hear the case.

In this diversity of jurisdiction case, it is this court's task to apply established Iowa law, as announced by the Iowa Supreme Court, not to change or expand Iowa law. *See, e.g., Northern Oil and Gas, Inc. v. EOG Resources, Inc.*, 74 F.4th 899, 904 (8th Cir.

19

2023).[7]  "When there is no state supreme court case directly on point," the court must "predict how the state supreme court would rule if faced with the same issue." *EMC Ins. Companies v. Entergy Arkansas, Inc.*, 924 F.3d 483, 485 (8th Cir. 2019) (citation modified).  If the state supreme court has not ruled on the issue, then federal courts "follow decisions from the intermediate state courts when they are the best evidence of [state] law." *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 726 (8th Cir. 2019) (quoting *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 799 (8th Cir. 2017)).

As noted above, the Iowa Supreme Court has applied the professional negligence exception only to claims against attorneys and accountants.  Twice, the Iowa Court of Appeals has refused to extend the exception to engineers, a profession which Goldberg Group, Introba and Hausmann all group together with architects under the umbrella of "design professionals."  Absent further guidance by the Iowa Supreme  Court, I decline to expand the professional negligence exception to include architects.  Thus, under the economic loss doctrine, as articulated by Iowa courts, Hausmann's professional negligence claims (Counts IV and VI) against Goldberg Group and Introba must be dismissed.

### D.	*Leave to Amend*

The parties have not addressed whether Hausmann should have the opportunity to amend its complaint.  Hausmann did not seek leave to amend when faced with the motions to dismiss.  Nor has it explained how any potential amendment might cure the issues addressed in this order.  As such, I find that there is no reason to permit an amendment. *See, e.g., Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th

---

[7] The Eighth Circuit favorably quoted *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990), for the proposition that "[l]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed." *Northern Oil*, 74 F.4th at 904.

20

Cir. 2002) ("[T]he district court was not required to engage in a guessing game" when the plaintiffs did not explain how they "would amend the complaint to save the claim.").

## VI.    CONCLUSION

For the reasons set forth herein:

1.    Introba's motion (Doc. 39) to dismiss is **granted in part and denied in part**. It is **granted** to Count VI and **denied** to Count VII.

2.    The County defendants' joint motion (Doc. 40) to dismiss is **granted in part and denied in part**. It is **granted** with regard to Count III to the limited extent that Hausmann contends that the Authority interfered with its own contract with Hausmann. It is otherwise **denied**.

3.    Goldberg Group's motion (Doc. 41) to dismiss is **granted in part and denied in part**. It is **granted** to Count IV and **denied** to Count V.


**IT IS SO ORDERED** this 3rd day of June, 2026.

_____
Leonard T. Strand
United States District Judge

21